# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| AMANDA J. KNIGHT, a/k/a Amanda J. Lehrman,<br><br>Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. C15-0107-CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

Amanda Knight[1] (claimant) seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Social Security disability insurance benefits (DIB) and Supplemental Security Income benefits (SSI), under Titles II and XVI (respectively) of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining her residual functional capacity. For the reasons that follow, the court affirms the Commissioner's decision.

## I. BACKGROUND

Claimant was born in 1982; she was 27 years old at the time she allegedly became disabled, and 32 years old at the time of the ALJ's decision. AR 10, 139, 719, 721.[2]

---

[1] Ms. Knight was formerly known by the last name Lehrman. She filed the application for benefits under the last name Franck.

[2] "AR" refers to the administrative record below.

Claimant completed high school and did not attend special education classes. AR 180, 900. Claimant previously worked as a customer complaint clerk, appliance assembler, cashier checker, security guard, and hand packager. AR 719. Claimant alleged her disability began on May 30, 2010. AR 78, 88, 704.

On July 12, 2010, claimant protectively applied for disability benefits. AR 300-18, 387. The Commissioner denied claimant's application on November 16, 2010, and denied reconsideration of the ruling on February 28, 2011. AR 78-82, 88-92. Claimant sought review by an ALJ. On March 24, 2011, ALJ Eric S. Basse conducted a hearing at which claimant, her social worker (Dennis Dozier), and vocational expert (Carma Mitchell), testified. AR 28-69. On June 25, 2012, the ALJ issued a decision denying claimant's claim. AR 7. On July 1, 2013, the Appeals Council denied claimant's requested review of the ALJ's decision. AR 1.

Claimant filed a complaint in this court on August 21, 2013, seeking judicial review. *Lehrman v. Colvin*, No. 1:13-cv-00082-JSS (N.D. Iowa) (Doc. 3). On April 24, 2014, the parties filed a joint motion to remand the case for further development of the record. *Id*. (Doc. 14). Specifically, the parties indicated:

> Upon receipt of the Court's remand order, the Appeals Council will vacate the decision and remand this case to an ALJ. The Appeals Council will direct the ALJ to give the claimant an opportunity for a hearing and to submit additional evidence. The ALJ will further evaluate plaintiff's vision impairment and obtain medical expert testimony and/or a consultative examination to determine the extent of plaintiff's vision limitations. The ALJ will obtain supplemental vocational expert testimony to determine the impact of plaintiff's impairments upon the occupational base.

*Id*. (Doc. 14, at 2). On April 25, 2014, the court granted the parties' motion and remanded the case for further proceedings. *Id*. (Doc. 15).

On February 20, 2015, the ALJ conducted a second hearing. AR 28, 734. At that hearing, claimant and vocational expert, Randall L. Harding, testified. AR 734-772. On June 4, 2015, the ALJ again denied claimant's application. AR 701. Claimant did not seek further review from the Appeals Council, and therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On September 30, 2015, claimant filed a complaint in this court. Doc. 3. On January 6, 2016, with the consent of the parties, the Honorable Chief Judge Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. Doc. 7. The parties have briefed the issues, and on June 2, 2016, the court deemed the matter fully submitted and ready for decision. Doc. 16.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to physical or mental impairments, the individual "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. *Id.* § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. *Id.* § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting." *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his/her past relevant work. If the claimant can still do his/her past relevant work then he/she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his/her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* §§ 404.1545(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must

show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id*. §§ 404.1545(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use was a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id*. If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

### III.   THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) Claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

(2) Claimant has not engaged in substantial gainful activity since May 30, 2010, the alleged onset date.

(3) Claimant has the following severe impairments: Insulin Dependent Diabetes; Mellitus; Reinopathy; Nephropathy; Headaches/Migraines; Chronic Kidney

Disease; Major Depressive Disorder; Generalized Anxiety Disorder; Social Phobia; and, Attention Deficit Hyperactivity Disorder.

(4) Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(5) Claimant has the Residual Functional Capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except: claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; she can only occasionally climb, but cannot climb ladders/ropes/scaffolds; she should not be given a job that requires fine detailed vision and she has no depth perception; she can perform simple, routine tasks with only occasional interaction with supervisors; and, she should have no interaction with the public.

(6) Claimant is unable to perform any past relevant work.

(7) Claimant was born in 1982 and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

(8) Claimant has at least a high school education and is able to communicate in English.

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not the claimant has transferable job skills.

(10) Considering the claimant's age, education, work experience, and Residual Functional Capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.

(11) Claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2010, through the date of this decision.

AR 12–21.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a decision." *Wright*, 542 F.3d at 852 (quotation and citation omitted). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "simply because some evidenced may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.") (internal citation omitted).

## V. DISCUSSION

Claimant argues the ALJ's decision is flawed for two reasons:

1. The ALJ's residual functional capacity assessment is flawed because the ALJ failed to give controlling weight to the work-related limitations from claimant's treating nephrologist. Doc. 14, at 3-9.

2. The ALJ's residual functional capacity assessment is flawed because the ALJ failed to give controlling weight to the work-related limitations from claimant's treating psychiatrist. Doc. 14, at 11-15.

9

The court will address these arguments separately below.

### A. *RFC Determination - Applicable Standards*

The claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a)(1). "The ALJ must determine a claimant's RFC based on all of the relevant evidence." *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004). This includes "an individual's own description of [her] limitations." *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). *See also Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (an ALJ is required to "determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations."). The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. At Step Four, the claimant has the burden to prove his/her RFC, and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Moreover, an "ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

### B. *Whether The ALJ Properly Evaluated Opinions by Dr. Ramadugu*

Claimant argues the ALJ failed to give controlling weight to her treating nephrologist, Dr. Paramesh Ramadugu. Doc. 14, at 3. Claimant argues that Dr. Ramadugu opined that claimant's several limitations should be imposed on claimant's ability to work which, if imposed, would make her disabled. *Id.*, at 4. Claimant further argues the ALJ erred when he rejected Dr. Ramadugu's opinions on the ground that they were inconsistent with other medical records and with the record as a whole. *Id.* Claimant emphasizes the evidence showing she has a kidney disease (Doc. 14, at 6-7) and evidence supporting claimant's assertion of fatigue (Doc. 14, at 8-10).

The Commissioner disagrees and argues that substantial evidence in the record as a whole support's the ALJ's residual functional capacity assessment. In particular, the Commissioner argues that the ALJ properly concluded that he was "unable to attribute much weight" to Dr. Ramadugu's opinions (AR 717) because those opinions were inconsistent with the doctor's own treatment records and inconsistent with other evidence. Doc. 15, at 5-9. The Commissioner argues that, to the extent claimant relies on medical evidence regarding her kidney disease, Dr. Ramadugu's medical findings do not provide a linkage between that disease and the work limitations he opines should be imposed. Doc. 15, at 8-9.

The court finds the ALJ properly considered and weighed Dr. Ramadugu's opinions. Substantial evidence in the record as a whole supports the ALJ's conclusion that the limitations Dr. Ramadugu believes should be imposed are inconsistent with his own records and the record as a whole. Claimant argues the ALJ erred by finding she had stage 3 instead of stage 4 kidney disease. Doc. 14, at 10. Whether it was stage 3

kidney disease (as Dr. Ramadugu believed (AR 1672-73) and as the ALJ noted (AR 712)) or stage 4 kidney disease (as reflected in other medical records (AR 1430, 1631, 1675, and 1712)), the ALJ, nevertheless, found claimant's chronic kidney disease was a severe impairment. Furthermore, whether claimant's kidney disease is at stage 3 or 4 is of little import, unless there is a connection between that disease and the functional limitations Dr. Ramadugu believed were appropriate. The ALJ did not err in finding the medical records did not support that linkage. The medical records simply do not support a finding that claimant's kidney disease would prevent her from being able to walk more than a block, sit for more than fifteen minutes at one time, or lift more than ten pounds, or that her kidney disease required a job that would permit her to alternate between standing, walking, and sitting, or cause her to be absent more than four days a month as Dr. Ramadugu opined. AR 1799. Claimant herself testified that she does not "have a whole lot of symptoms" connected to her kidney disease other than some pain when she wakes up and having to "go to the bathroom a little more than normal." AR 37. There is nothing in the medical records to contradict claimant's own self-assessment in this regard.

The ALJ pointed to the record in concluding that Dr. Ramadugu's assertion that claimant's fatigue, pain, and numbness was inconsistent with his own treatment records. AR 717. The ALJ, for instance, noted that in November 2013, Dr. Ramadugu "found no focal deficits of the central nervous system," and in January 2014, claimant "denied fatigue and muscle weakness." AR 717. Other medical records suggest there are times claimant feels weak or has low energy (AR 1717, 1832), while at other times she has no complaints of weakness or fatigue (AR 1679, 1558, 1690, 1693, 1698, 1710, 1717, & 1726). Taken as a whole, however, the medical records do not support Dr. Ramadugu's assertion that claimant consistently suffers from fatigue, muscle weakness, pain and numbness that would render her unable to work. Given this, the ALJ did not err in discounting the weight he afforded to Dr. Ramadugu's opinion.

Claimant takes issue with the ALJ's reliance on a January 2014 medical report which indicated that claimant was not feeling fatigued. Claimant argues she was found unconscious and snidely comments: "So, at least when not unconscious, Ms. Knight was not fatigued." Doc. 14, at 8. Claimant misrepresents the record here. The record reflects that when the doctors spoke to claimant about her condition, she was "awake and alert." AR 1680. She had been admitted to the emergency room because she gave herself too much insulin. AR 1680. In relating her symptoms, she denied fatigue. AR 1679.

Claimant also takes issue with the ALJ's reliance on a January 2014 report where claimant denied muscle weakness because she complained of other symptoms consistent with a cold or flu. Doc. 14, at 8-9. Whether she had a cold or flu, however, does not negate the fact she denied muscle weakness on that day, which is inconsistent with Dr. Ramadugu's claim she consistently suffers muscle weakness. Indeed, as previously noted, claimant, rather consistently, denied muscle weakness. AR 1558, 1690, 1693, 1698, 1710, 1717, & 1726.

Further, the ALJ found other evidence in the record as a whole as inconsistent with the limitations Dr. Ramadugu opined were necessary. For example, claimant walks her dogs for one mile every day for exercise. AR 596, 1515. Claimant testified that she goes fishing once a week. AR 61. Claimant testified that she "spends considerable time cleaning" and goes bowling twice a week. AR 1515.[3] Claimant reported "doing well"

---

[3] Claimant asserts the ALJ was referencing an instance when she went bowling and hurt her shoulder, and argues "[b]owling is not *per se* inconsistent with Dr. Ramadugu's limitations." Doc. 14, at 9. First, the record reflects claimant regularly bowls, not just that she went bowling on a single occasion. Second, although bowling twice a week is not *per se* inconsistent with Dr. Ramadugu's limitations, such regular, physical activity is some evidence that is inconsistent with those limitations.

13

caring for her newborn daughter. AR 1750. The ALJ properly considered these activities as inconsistent with the limitations Dr. Ramadugu claimed were necessary.

The ALJ was within his discretion in declining to afford Dr. Ramadugu's opinion controlling or even substantial weight. *See*, *e.g.*, *Michael v. Colvin*, No. 14-3460, at 17 (8th Cir. Mar. 23, 2016 slip opinion) (finding ALJ did not err in giving little weight to physician's opinion when it was contradicted by other acceptable medical sources in the record); *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005) (holding that a physician's opinion is entitled to less weight when it is inconsistent with the physician's own findings). The weight the ALJ afforded Dr. Ramadugu's opinion is within the zone of choice by the ALJ, which this court will not disturb on review.

### C. *Whether The ALJ Properly Evaluated the Opinions of Dr. Munagala*

Claimant argues the ALJ erred in rejecting the opinion of psychiatrist Dr. Sundara Munagala. Doc. 14, at 11-15. Dr. Munagala diagnosed claimant with major depressive disorder, Post Traumatic Stress Disorder, and a panic disorder. AR 1807. In a Mental Medical Source Statement completed on February 12, 2015, Dr. Munagala concluded that claimant had "no useful ability to function" in every single category of unskilled work. AR 1809-10. Dr. Munagala also opined that claimant's condition would require her to be absent from work more than four days every month. AR 1810. Claimant argues that Dr. Munagala's opinion is consistent with findings by her therapist (Dennis Dozier), her counselor (Linda Topinka[4]), and consultative examiner (Dr. Harlan Stientjes). Doc. 14, at 12-15. Finally, claimant argues that the ALJ improperly relied

---

[4] Claimant's brief consistently refers to this person as "Potinka." Doc. 14, at 12-13. The Commissioner's brief variously uses "Topinka" and "Potinka." Doc. 15, at 14.-15. The medical records clearly show the name is Topinka. AR 461-66.

14

on claimant's Global Assessment Functioning (GAF) score as the "only specific evidence cited by the ALJ" in discounting Dr. Munagala's opinion, asserting that reliance on GAF scores is inappropriate. Doc. 14, at 15.

The Commissioner disagrees, arguing that the ALJ properly discounted Dr. Munagala's opinion. Doc. 15, at 9-17. The Commissioner argues that the ALJ properly determined that Dr. Munagala's opinion was inconsistent with her own records and were based on a complete acceptance of claimant's subjective complaints, which are not supported by the record as a whole. Doc. 15, at 9-12. The Commissioner also argues that the records from Dozier, Topinka, and Stientjes do not support Dr. Munagala's opinion. Doc. 15, at 12-17.

The court agrees with the Commissioner that substantial evidence in the record as whole supports the ALJ's determination to attribute "little weight" to Dr. Munagala's opinion. AR 717. The ALJ noted that Dr. Munagala's opinion was inconsistent with her own treatment records. For example, Dr. Munagala's records indicate that she found claimant had "mild symptoms" and "generally functioned well" (AR 718, 1835, 1838), her condition was responsive to treatment (AR 718, 1849), and claimant's GAF score was 61-70, which suggests mild symptoms (AR 717). *See also Schwartz v. Colvin*, No. 3:12-CV-01070, 2014 WL 257846, at \*5 (M.D. Pa. Jan. 23, 2014) (citing *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994)). Claimant is correct that ALJs should not place great weight on GAF scores. The trend noted by the Court of Appeals for the Eighth Circuit is that GAF scores only have "limited importance." *Pate-Fires v. Astrue*, 564 F.3d 935, 937–38 n.1–3 (8th Cir. 2009); *see also Nowling v. Colvin*, 813 F.3d 1110, 1115 n.3 (citing *Jones v. Astrue,* 619 F.3d 963, 973–74 (8th Cir. 2010) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security Income] disability programs and has indicated that [GAF] scores have no direct correlation to the severity requirements of the

mental disorders listings.")). Here, the ALJ considered the GAF score in a proper manner as a means of determining the reliability of Dr. Munagala's opinion. *See Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) (approving an ALJ's consideration of GAF scores in assessing a treating source's opinion).

The ALJ was also correct that the records from Dozier do not support Dr. Munagala's assessment. The inconsistency is most readily apparent when comparing Dr. Munagala's February 12, 2015, Mental Medical Source Statement (AR 1809-10), where he concluded that claimant had "no useful ability to function" in every single category of unskilled work, with Dozier's February 8, 2015, Mental Impairment Questionnaire, which in an identical chart, Dozier did not find claimant fell into the "no useful ability to function" category on a single factor (AR 1804-05). For example, whereas Dr. Munagala found claimant had "no useful ability to function" in all categories, Dozier found claimant had "limited but satisfactory" ability to function with regard to: (1) remember work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out very short and simple instructions; (4) interact appropriately with the general public; (5) maintain socially appropriate behavior; (6) work in coordination with or proximity to others without being unduly distracted; (7) make simple work-related decisions; (8) ask simple questions or request assistance; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with coworkers or peers without unduly distracting them or exhibiting behavior extremes; and (10) deal with normal work stress. AR 1804-05. Indeed, Dozier found claimant was "unable to meet competitive standards" with regard only to her ability to "maintain regular attendance and be punctual within customary, usually strict tolerances" and "perform at a consistent pace without unreasonable number and length of rest periods." *Id*.

Other of Dozier's records reflect equivocal statements about claimant's condition and ability to function. AR 46, 52-55, 57. Dozier did opine that without treatment, claimant would deteriorate (AR 55), but conditions that can be controlled through treatment are not disabling. *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). Dozier's opinion that "even a minimal increase in mental demands or change in the environment" would cause claimant to decompensate (AR 1806) are inconsistent with the medical records that show no decompensation in claimant's mental state even after giving birth to a premature baby. AR 1750. Dozier's conclusion that claimant would have difficulty working a forty-hour week deserves no weight as it invades the Commissioner's responsibility. 20 C.F.R. § 404.1527(d). The ALJ also properly determined that Dozier's opinion of claimant's fragile functionality was inconsistent with the rest of the record. AR 717, 1806, 1871.

Similarly, the ALJ correctly found that Topinka's records were inconsistent with Dr. Munagala's assessment. The inconsistency is, again, most readily apparent when comparing Dr. Munagala's February 2015, Mental Medical Source Statement (AR 1809-10), where it is concluded that claimant had "no useful ability to function" in every single category of unskilled work, with Topinka's May 2011, Mental Impairment Questionnaire. Again, both contained the identical chart. Topinka did not rate claimant as having "no useful ability to function" in any category. (AR 463-64). The ALJ found other medical records from Topinka are also inconsistent with Dr. Munagala's opinion. AR 713-14.

Finally, the ALJ did not err in concluding that the opinion of Dr. Stientjes was entitled to "some but not great weight." AR 716. First, Dr. Stientjes' assessment noted that claimant's presentation was "somewhat fake" (AR 1514), calling into question the reliability of any opinion based on claimant's self-reporting. Second, Dr. Stientjes referenced vague work limitations, such as stating that claimant "will maintain she has

particular difficulty with men but it is likely more generalized than that." AR 1515. Third, other parts of Dr. Stientjes' findings are fully consistent with the work limitations the ALJ included in his residual functional capacity assessment. For example, Dr. Stientjes found claimant should only occasionally interact with the public, and she can follow oral instructions. AR 1514-15.

Claimant's argument regarding Dr. Munagala also suffers from the same problem as her argument regarding Dr. Ramadugu's opinion. That is, she focuses on a medical or mental issue, but fails to demonstrate a linkage between that issue and functional limitations that would show that he ALJ's residual functional capacity assessment was erroneous. With Dr. Ramadugu, claimant focused on her kidney disease, but wholly failed to show her kidney disease required functional limitations inconsistent with the ALJ's FRC assessment. With Dr. Munagala, claimant focuses on claimant's alleged abuse and neglect as a child (Doc. 14, at 14-15), but has not demonstrated how that history requires functional limitations on her ability to work. Rather, claimant argues, as a general proposition, that "abuse and neglect is strongly correlated with workplace problems," citing various studies. Doc. 14, at 14-15. All that may be true, but the question before the ALJ is not whether abuse and neglect can affect workplace performance, but, rather, whether there is any evidence in the record to support a conclusion that claimant's alleged abuse and neglect does affect claimant's ability to work. The record in this case simply fails to show that connection.

## *VI. CONCLUSION*

This is a case within the Commissioner's zone of choice in determining that claimant is not disabled. After a thorough review of the entire record, the court concludes the ALJ's decision to deny claimant's disability benefits is supported by substantial

evidence on the record as a whole.  Accordingly, the court **affirms** the decision of the ALJ.

**IT IS SO ORDERED** this 27th day of October, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa